IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal No.: 4:16-CR-00577-BHH |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| EDWARD LAWRENCE JOHNSON, II | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**Government's Response to Defendant's Motion to Reduce Sentence
Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i)**

Defendant Edward Lawrence Johnson, II ("Johnson") has filed a motion asking this Court to reduce his sentence of imprisonment under 18 U.S.C. § 3582(c)(1)(A) and order his immediate release, relying in part on the threat posed by the COVID-19 pandemic. The United States respectfully opposes the motion. This Court should deny the motion without prejudice for Johnson's failure to exhaust administrative remedies. Should the Court reach the merits, it should deny the motion with prejudice because Johnson has not met his burden of establishing that a sentence reduction is warranted under the statute.

**Factual Background**

On September 20, 2017, Johnson pled guilty to Count 2 of the Superseding Indictment charging him with wire fraud, in violation of 18 U.S.C. § 1343. ECF Nos. 116, 117. On June 12, 2018, this Court sentenced his to 51 months of imprisonment. ECF Nos. 153, 155. Defendant has served 23 months of that sentence. He now moves under 18 U.S.C. § 3582(c)(1)(A) for a sentence reduction resulting in his immediate release from the custody of the Bureau of Prisons (BOP), relying on the threat posed by the COVID-19 pandemic.

## I.    BOP's Response to the COVID-19 Pandemic

As this Court is well aware, COVID-19 is an extremely dangerous illness that has caused many deaths in the United States in a short period of time and that has resulted in massive disruption to our society and economy.  In response to the pandemic, BOP has taken significant measures to protect the health of the inmates in its charge.

BOP has explained that "maintaining safety and security of [BOP] institutions is [BOP's] highest priority."  BOP, Updates to BOP COVID-19 Action Plan: Inmate Movement (Mar. 19, 2020), available at https://www.bop.gov/resources/news/20200319_covid19_update.jsp.

Indeed, BOP has had a Pandemic Influenza Plan in place since 2012. BOP Health Services Division, Pandemic Influenza Plan-Module 1: Surveillance and Infection Control (Oct. 2012), available at https://www.bop.gov/resources/pdfs/pan_flu_module_1.pdf.  That protocol is lengthy and detailed, establishing a six-phase framework requiring BOP facilities to begin preparations when there is first a "[s]uspected human outbreak overseas." *Id*. at i.  The plan addresses social distancing, hygienic and cleaning protocols, and the quarantining and treatment of symptomatic inmates.

Consistent with that plan, BOP began planning for potential coronavirus transmissions in January.  At that time, the agency established a working group to develop policies in consultation with subject matter experts in the Centers for Disease Control, including by reviewing guidance from the World Health Organization.

On March 13, 2020, BOP began to modify its operations, in accordance with its Coronavirus (COVID-19) Action Plan ("Action Plan"), to minimize the risk of COVID-19 transmission into and inside its facilities. Since that time, as events require, BOP has repeatedly revised the Action Plan to address the crisis.

Beginning April 1, 2020, BOP implemented Phase Five of the Action Plan, which currently governs operations.  The current modified operations plan requires that all inmates in every BOP institution be secured in their assigned cells/quarters for a period of at least 14 days, in order to stop any spread of the disease.  Only limited group gathering is afforded, with attention to social

distancing to the extent possible, to facilitate commissary, laundry, showers, telephone, and computer access. Further, BOP has severely limited the movement of inmates and detainees among its facilities.  Though there will be exceptions for medical treatment and similar exigencies, this step as well will limit transmissions of the disease.  Likewise, all official staff travel has been cancelled, as has most staff training.

All staff and inmates have been and will continue to be issued face masks and strongly encouraged to wear an appropriate face covering when in public areas when social distancing cannot be achieved.

Every newly admitted inmate is screened for COVID-19 exposure risk factors and symptoms.  Asymptomatic inmates with risk of exposure are placed in quarantine for a minimum of 14 days or until cleared by medical staff. Symptomatic inmates are placed in isolation until they test negative for COVID-19 or are cleared by medical staff as meeting CDC criteria for release from isolation. In addition, in areas with sustained community transmission, such as Philadelphia, all facility staff are screened for symptoms.  Staff registering a temperature of 100.4 degrees Fahrenheit or higher are barred from the facility on that basis alone. A staff member with a stuffy or runny nose can be placed on leave by a medical officer.

Contractor access to BOP facilities is restricted to only those performing essential services (e.g. medical or mental health care, religious, etc.) or those who perform necessary maintenance on essential systems. All volunteer visits are suspended absent authorization by the Deputy Director of BOP.  Any contractor or volunteer who requires access will be screened for symptoms and risk factors.

Social and legal visits were stopped as of March 13, and remain suspended until at least May 18, 2020, to limit the number of people entering the facility and interacting with inmates.  In order to ensure that familial relationships are maintained throughout this disruption, BOP has increased detainees' telephone allowance to 500 minutes per month.  Tours of facilities are also suspended. Legal visits will be permitted on a case-by-case basis after the attorney has been screened for infection in accordance with the screening protocols for prison staff.

Further details and updates of BOP's modified operations are available to the public on the BOP website at a regularly updated resource page: www.bop.gov/coronavirus/index.jsp.

In addition, in an effort to relieve the strain on BOP facilities and assist inmates who are most vulnerable to the disease and pose the least threat to the community, BOP is exercising greater authority to designate inmates for home confinement. On March 26, 2020, the Attorney General directed the Director of the Bureau of Prisons, upon considering the totality of the circumstances concerning each inmate, to prioritize the use of statutory authority to place prisoners in home confinement. That authority includes the ability to place an inmate in home confinement during the last six months or 10% of a sentence, whichever is shorter, *see* 18 U.S.C. § 3624(c)(2), and to move to home confinement those elderly and terminally ill inmates specified in 34 U.S.C. § 60541(g).

Congress has also acted to enhance BOP's flexibility to respond to the pandemic. Under the Coronavirus Aid, Relief, and Economic Security Act, enacted on March 27, 2020, BOP may "lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement" if the Attorney General finds that emergency conditions will materially affect the functioning of BOP. Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516 (to be codified at 18 U.S.C. § 3621 note). On April 3, 2020, the Attorney General gave the Director of BOP the authority to exercise this discretion, beginning at the facilities that thus far have seen the greatest incidence of coronavirus transmission. As of May 13, 2020, BOP has transferred 2,549 inmates to home confinement. *See* Federal Bureau of Prisons, *COVID-19 Home Confinement Information*, *at* https://www.bop.gov/coronavirus/.

Taken together, all of these measures are designed to mitigate sharply the risks of COVID-19 transmission in a BOP institution. BOP has pledged to continue monitoring the pandemic and to adjust its practices as necessary to maintain the safety of prison staff and inmates while also fulfilling its mandate of incarcerating all persons sentenced or detained based on judicial orders.

Unfortunately and inevitably, some inmates have become ill, and more likely will in the weeks ahead. But BOP must consider its concern for the health of its inmates and staff alongside

other critical considerations. For example, notwithstanding the current pandemic crisis, BOP must carry out its charge to incarcerate sentenced criminals to protect the public.  It must consider the effect of a mass release on the safety and health of both the inmate population and the citizenry. It must marshal its resources to care for inmates in the most efficient and beneficial manner possible. It must assess release plans, which are essential to ensure that a defendant has a safe place to live and access to health care in these difficult times.  And it must consider myriad other factors, including the availability of both transportation for inmates (at a time that interstate transportation services often used by released inmates are providing reduced service), and supervision of inmates once released (at a time that the Probation Office has necessarily cut back on home visits and supervision).

## II.     Defendant's Conviction and Request for a Sentence Reduction

Johnson pled guilty to wire fraud.  As the Offense Conduct section of his Presentence Investigation Report ("PSR") shows, from 2012 through 2017, Johnson engaged in extensive fraudulent activity wherein he employed numerous aliases and business names to carry on multiple schemes for illegally obtaining money from victims.  *See* PSR at ¶¶ 20-40.  Through these various schemes he defrauded 41 victims out of $1,246,122.00.  *Id*. at ¶ 40.  In fact, as the PSR shows, Johnson attempted to cause more financial loss to these victims, resulting in a higher intended loss figure of $1,813,822.00.  *Id*. at ¶¶ 39, 40.  Even while out on bond for the instant offense, Johnson continued to commit significant fraud which resulted in his loss of acceptance of responsibility. *Id*. at ¶¶ 11-16, 46, 69.  As a result, the PSR calculated Johnson's total offense level at 25.  *Id*. at ¶¶ 61-63, 69, 70.  Johnson's criminal history includes a felony conviction for fraudulent check and a conviction for breach of trust/obtaining property under false tokens.  *Id*. at ¶¶ 48, 49.  These convictions, combined with the fact that he committed the instant offense while on state probation, resulted in a total of 4 criminal history which placed him in a criminal history category of III.  *Id*. at ¶¶ 51-53.  Based on a criminal history category of III and a total offense level of 25, Johnson's applicable guideline range of imprisonment was 70 to 87 months    *Id*. at ¶ 93.  However, the government offered Johnson a plea agreement which included an 11(c)(1)(C) stipulation to a

sentencing range of imprisonment of 41 to 51 months.  *Id.* at ¶ 95.  This Court sentenced Johnson to the high end of that stipulated range to 51 months' imprisonment.  ECF No. 155.

Johnson has been in custody since his sentencing on June 12, 2018.  ECF No. 153.  Thus, he has been incarcerated for only 23 months, which is less than half of the sentence of imprisonment imposed by this Court.  Furthermore, within the last nine months, Johnson has been sanctioned for the disciplinary violation of possessing a hazardous tool (cellphone) while in the Bureau of Prisons.  *See* Inmate Disciplinary Record at 1.

Johnson is incarcerated at the Federal Correctional Complex ("FCC") Coleman-Low in Coleman, Florida.  As of May 13, 2020, only one inmate and one staff member of the institution have tested positive for COVID 19.  *See* Federal Bureau of Prisons, *COVID-19 Cases*, *at* https://www.bop.gov/coronavirus/.

In his current motion, it is unclear when Johnson first submitted his request for compassionate release to the Bureau of Prisons.  *See* ECF No. 157 at 2-3.  The earliest date alleged is April 2, 2020, when he claims he submitted his "Compassionate Release Packet" to his Case Manager.  *Id*. at 2.  Only t**wenty-two days later**, on April 24, 2020, Johnson filed a motion with this Court seeking compassionate release under 18 U.S.C. § 3582(c)(1)(A) on the ground that he allegedly suffers from "acute hypertension and chronic kidney disease" which makes him particularly vulnerable to becoming seriously ill from COVID-19.  *Id.* at 1-3.

**Legal Framework**

Under 18 U.S.C. § 3582(c)(1)(A), this Court may, in certain circumstances, grant a defendant's motion to reduce his or her term of imprisonment.  Before filing that motion, however, the defendant must first request that BOP file such a motion on his or her behalf. § 3582(c)(1)(A).  A court may grant the defendant's own motion for a reduction in his sentence only if the motion was filed "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or after 30 days have passed

4:16-cr-00577-BHH     Date Filed 05/14/20     Entry Number 177     Page 7 of 21

"from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.*

If that exhaustion requirement is met, a court may reduce the defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]" if the Court finds, as relevant here, that (i) "extraordinary and compelling reasons warrant such a reduction" and (ii) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A)(i). As the movant, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016); *United States v. Green*, 764 F.3d 1352, 1356 (11th Cir. 2014).

The Sentencing Commission has issued a policy statement addressing reduction of sentences under § 3582(c)(1)(A). As relevant here, the policy statement provides that a court may reduce the term of imprisonment after considering the § 3553(a) factors if the Court finds that (i) "extraordinary and compelling reasons warrant the reduction;" (ii) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g);" and (iii) "the reduction is consistent with this policy statement." USSG § 1B1.13.[1]

The policy statement includes an application note that specifies the types of medical conditions that qualify as "extraordinary and compelling reasons." First, that standard is met if the defendant is "suffering from a terminal illness," such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, [or] advanced dementia." USSG § 1B1.13, cmt. n.1(A)(i). Second, the standard is met if the defendant is:

> (I) suffering from a serious physical or medical condition,

---

[1] The policy statement refers only to motions filed by the BOP Director. That is because the policy statement was last amended on November 1, 2018, and until the enactment of the First Step Act on December 21, 2018, defendants were not entitled to file motions under § 3582(c). *See* First Step Act of 2018, Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239; *cf.* 18 U.S.C. § 3582(c) (2012). In light of the statutory command that any sentence reduction be "consistent with applicable policy statements issued by the Sentencing Commission," § 3582(c)(1)(A)(ii), and the lack of any plausible reason to treat motions filed by defendants differently from motions filed by BOP, the policy statement applies to motions filed by defendants as well.

> (II) suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

USSG § 1B1.13, cmt. n.1(A)(ii). The application note also sets out other conditions and characteristics that qualify as "extraordinary and compelling reasons" related to the defendant's age and family circumstances. USSG § 1B1.13, cmt. n.1(B)-(C). Finally, the note recognizes the possibility that BOP could identify other grounds that amount to "extraordinary and compelling reasons." USSG § 1B1.13, cmt. n.1(D).

**Arguments**

This Court should deny Defendant's motion for a reduction in his sentence without prejudice because he has failed to exhaust administrative remedies. Should the Court reach the merits of his motion, the Court should deny it with prejudice on either of two independently sufficient grounds. First, Defendant has not established that "extraordinary and compelling reasons" support a sentence reduction; second, Defendant has not met his burden to show that a reduction is warranted in light of the relevant § 3553(a) factors.

**I.     This Court Should Deny the Motion Without Prejudice Because Defendant Has Not Exhausted Administrative Remedies.**

This Court lacks authority to act on Defendant's motion for a sentence reduction at this time. As explained above, § 3582(c) requires that a request for a sentence reduction be presented first to BOP for its consideration; only after 30 days have passed, or the defendant has exhausted all administrative rights to appeal the BOP's failure to move on the defendant's behalf, may a defendant move for a sentence reduction in court. That restriction is mandatory, and it continues to serve an important function during the present crisis. In this case, Johnson did not exhaust administrative rights to appeal any decision or inaction by the BOP, nor did he wait for 30 days after filing a request for compassionate release to the BOP to file the current motion. However, the government is very mindful of the concerns created by COVID-19, and BOP is making its best

effort both to protect the inmate population and to address the unique circumstances of individual inmates.

Section 3582(c) provides that a court may not modify a term of imprisonment once it has been imposed unless it "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . ." § 3582(c)(1)(A). The requirement that a defendant either exhaust administrative appeals or wait 30 days after presenting a request to the warden before seeking judicial relief is mandatory and must be enforced by the Court. As the Third Circuit recently confirmed, where 30 days have not passed following presentation of a request to a warden, the statute "presents a glaring roadblock foreclosing compassionate release at this point." *United States v. Raia*, 2020 WL 1647922, at *2 (3d Cir. Apr. 2, 2020), *as revised* (Apr. 8, 2020). The vast majority of district courts to address this issue agree. *See, e.g.*, *United States v. Sundblad*, 6:16-cr-00047-JMC, 2020 WL 1650041 (D.S.C. Apr. 3, 2020).

"'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010). As the Supreme Court has recognized, finality is an important attribute of criminal judgments, and one "essential to the operation of our criminal justice system." *Teague v. Lane*, 489 U.S. 288, 309 (1989) (plurality opinion). Accordingly, it is well established that once a district court has pronounced sentence and the sentence becomes final, the court has no inherent authority to reconsider or alter that sentence. Rather, it may do so only if authorized by statute. *See, e.g.*, *United States v. Addonizio*, 442 U.S. 178, 189 & n.16 (1979); *United States v. Washington*, 549 F.3d 905, 917 (3d Cir. 2008); *United States v. Smartt*, 129 F.3d 539, 540 (10th Cir. 1997) ("A district court does not have inherent authority to modify a previously imposed sentence; it may do so only pursuant to statutory authorization.") (internal quotation marks omitted).

Consistent with that principle of finality, § 3582(c) provides that a court generally "may not modify a term of imprisonment once it has been imposed," except in three circumstances: (i) upon a motion for reduction in sentence under § 3582(c)(1)(A), such as that presented by the defendant; (ii) "to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure," § 3582(c)(1)(B); and (iii) where the defendant was sentenced "based on" a retroactively lowered sentencing range, § 3582(c)(2).

Given the plain language and purpose of the statute, the requirements for filing a sentence-reduction motion—including the requirement that a defendant exhaust administrative remedies or wait 30 days before moving in court for a reduction—are properly viewed as jurisdictional. Section 3582(c) states that a "court may not modify" a term of imprisonment except in enumerated circumstances. 18 U.S.C. § 3582(c).  It thus "speak[s] to the power of the court rather than to the rights or obligations of the parties," *Landgraf v. USI Film Prods.*, 511 U.S. 244, 274 (1994) (internal quotation marks omitted), delineating "when, and under what conditions," a court may exercise its "'adjudicatory authority,'" *Bowles v. Russell*, 551 U.S. 205, 212-13 (2007) (quoting *Eberhart v. United States*, 546 U.S. 12, 16 (2005) (per curiam)).  That conclusion is reinforced by the historical powerlessness of the courts to modify a sentence after the expiration of the term at which it was entered. *See United States v. Mayer*, 235 U.S. 55, 67-69 (1914); *United States v. Welty*, 426 F.2d 615, 617-618 & n.8 (3d Cir. 1970). Section 3582(c) accordingly has been understood as conferring the jurisdictional authority that previously was lacking by providing express statutory authorization to modify otherwise final sentences.[2]

In recent years, the Supreme Court has cautioned against imprecise use of the "jurisdictional" label, and explained that a statutory claim-processing rule, even if mandatory, is presumed to be nonjurisdictional absent a clear statement to the contrary. *See Fort Bend County v. Davis*, 139 S. Ct. 1843, 1848-50 (2019).  A prescription is not jurisdictional merely because "it

---

[2] The Fifth Circuit has recognized that the prerequisites for relief under § 3582(c)(2), which allows a sentence reduction based on a retroactive guideline amendment, are jurisdictional. *See, e.g.*, *United States v. Garcia*, 606 F.3d 209, 212 n.5 (5th Cir. 2010) (per curiam).

'promotes important congressional objectives,'" *id*. at 1851 (quoting *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 169 n.9 (2010)), and courts should not deem jurisdictional rules that "seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times," *Henderson v. Shinseki*, 562 U.S. 428, 435 (2011). But whether a prescription is jurisdictional turns on Congress's intent, which is properly determined by the text, context, relevant historical treatment, and purpose of the provision. *Henderson*, 562 U.S. at 436. Here, the relevant factors indicate that § 3582(c) sets forth a jurisdictional limitation on a district court's authority to modify a sentence, such that a district court lacks jurisdiction to consider a motion for a sentence reduction where the defendant has failed to satisfy the exhaustion requirement of § 3582(c)(1)(A).[3]

While the government maintains that the time limitation in § 3582(c)(1)(A) is jurisdictional, given that it stands as an exception to the historic and fundamental rule that courts may not revisit a final criminal judgment, the point is ultimately academic. Even if the exhaustion requirement of § 3582(c)(1)(A) is not jurisdictional, it is at least a mandatory claim-processing rule and must be enforced if a party "properly raise[s]" it. *Eberhart*, 546 U.S. at 19 (holding that Fed. R. Crim. P. 33, which permits a defendant to move for a new trial within 14 days of the verdict, is a nonjurisdictional but mandatory claim-processing rule). The government raises the rule here, and it must be enforced.[4]

Some have suggested that the exhaustion requirement of § 3582(c)(1)(A) may be excused by a court as "futile" during the present pandemic. But there is no "futility" exception, as the Supreme Court has made clear that courts have no authority to invent an exception to a statutory

---

[3] Although we use the term "exhaustion requirement," to be clear, an inmate need not "exhaust" administrative remedies if the motion is filed in court 30 days after receipt of a request by the warden.

[4] Indeed, even those courts that have concluded that the requirements of § 3582(c)(2) are not jurisdictional still enforce the statutory prerequisites to relief. *See, e.g.*, *United States v. Taylor*, 778 F.3d 667, 670 (7th Cir. 2015) (recognizing that even if a court has the "power to adjudicate" a motion under § 3582(c)(2), it may lack "authority to *grant* a motion . . . because the statutory criteria are not met") (emphasis in original).

exhaustion requirement.  Two district courts have recently rejected the argument that any such futility exception exists under § 3582.  *See United States v. Holden*, 2020 WL 1673440, at *5 (D. Or. Apr. 6, 2020); *United States v. Eberhart*, 2020 WL 1450745, at *1 (N.D. Cal. Mar. 25, 2020). While a few district courts have incorrectly excused the § 3582 exhaustion requirement as futile, two of those decisions have rested on the fact that the defendant had a matter of days left to serve on the sentence, a consideration not present in this case [*if true*]. *See United States v. Colvin*, 2020 WL 1613943, at *1 (D. Conn. Apr. 2, 2020) (finding exhaustion futile because inmate had 11 days left on her sentence); *United States v. Perez*, 2020 WL 1546422, at *1 (S.D.N.Y. Apr. 1, 2020) (finding exhaustion futile because inmate had less than 21 days left on his sentence and was recovering from two vicious beatings while in prison); *but see United States v. Zukerman*, 2020 WL 1659880, at *1 (S.D.N.Y. Apr. 3, 2020) (finding exhaustion futile where obese, 75-year old inmate suffered from diabetes and hypertension).  At least one of those decisions incorrectly relied on precedent addressing a judicially created—as opposed to statutorily created—exhaustion requirement. *See Perez*, 2020 WL 1546422 at *2 (relying only on *Washington v. Barr*, 925 F.3d 109, 118 (2d Cir. 2019)).[5]  And in any event, a request in this context is not futile, because, as explained further below, BOP fully considers requests for sentence reductions. Indeed, BOP often concurs with such requests.  During the period from the passage of the First Step Act on December 21, 2018, until mid-March 2020 (before the coronavirus crisis began), BOP consented to a reduction in sentence in 55 cases.

---

[5] To the extent *Perez* also suggests that *Mathews v. Eldridge*, 424 U.S. 319 (1976), supports an exception to the exhaustion requirement here, *see* 2020 WL 1546422, at *2 n.2, that is incorrect. In *Eldridge*, the claimant complied with the "nonwaivable and nonexcusable requirement that an individual present a claim to the agency before raising it in court." *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 16 (2000). And while the Court in *Eldridge* recognized that a constitutional challenge "entirely collateral to [the claimant's] substantive claim of entitlement" might evade a statutory exhaustion requirement, 424 U.S. at 330, the defendant's claim for relief in this Court is the same claim he was required to present to BOP. *See also United States v. Demaria*, 2020 WL 1888910, at *3 & n.8 (S.D.N.Y. Apr. 16, 2020) (explaining the *Perez* error at length and the inapplicability of the cases on which it relied).

The requirement of a 30-day period to afford BOP the initial review of the defendant's request therefore cannot be excused.

While Congress indisputably acted in the First Step Act to expand the availability of compassionate release, it expressly imposed on inmates the requirement of initial resort to administrative remedies. And this is for good reason: BOP conducts an extensive assessment for such requests. *See* 28 C.F.R. § 571.62(a); BOP Program Statement 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582(c)(1)(A) and 4205(g), *available at* https://www.bop.gov/policy/progstat/5050_050_EN.pdf. As the Procedures reflect, the BOP completes a diligent and thorough review, with considerable expertise concerning both the inmate and the conditions of confinement. Its assessment will always be of value to the parties and the Court.

That is especially true during the current crisis. As explained above, BOP must balance a host of considerations in deciding whether to release an inmate to recommend a reduction in an inmate's sentence or grant the inmate home confinement—not only the health of the inmate and BOP staff, but also the safety of the public. BOP is best positioned to determine the proper treatment of the inmate population as a whole, taking into account both individual considerations in light of on an inmate's background and medical history and more general considerations regarding the conditions and needs at particular facilities. The provision of § 3582(c)(1)(A) prioritizing administrative review therefore makes sense not only in the ordinary case, but also at this perilous time. As the Third Circuit has held, "[g]iven BOP's shared desire for a safe and healthy prison environment, . . . strict compliance with § 3582(c)(1)(A)'s exhaustion requirement takes on added—and critical—importance." *Raia*, 2020 WL 1647922, at *2. *See also United States v. McCann,* 2020 WL 1901089, at *2 (E.D. Ky. Apr. 17, 2020) ("The Court recognizes that these are unsettling times for everyone, including prisoners. But in such a context, the exhaustion requirement of the compassionate release statute is perhaps most important.").

Accordingly, Defendant's motion should be denied without prejudice to refiling once he has exhausted administrative remedies.

II.     **Should The Court Reach the Merits, It Should Deny The Motion Because Johnson Has Failed to Present Any "Extraordinary and Compelling Reasons" Warranting a Sentence Reduction and Because The § 3553(A) Factors Weigh Against His Release.**

Even if this Court determines that Johnson has exhausted administrative remedies and that the Court has the authority to grant his motion for a reduction of his sentence, it should be denied for two reasons.  First, Johnson has not identified "extraordinary and compelling reasons" for that reduction within the meaning of § 3582(c)(1)(A) and the Sentencing Commission's policy statement.  Second, the statutory sentencing factors do not weigh in favor of his release.

A.     **Johnson Has Not Identified "Extraordinary and Compelling Reasons" for a Sentence Reduction.**

Defendant's request for a sentence reduction should be denied because he has not demonstrated "extraordinary and compelling reasons" warranting release.  As explained above, under the relevant provision of § 3582(c), a court can grant a sentence reduction only if it determines that "extraordinary and compelling reasons" justify the reduction and that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i).  The Sentencing Commission's policy statement defines "extraordinary and compelling reasons" to include, as relevant here, certain specified categories of medical conditions. USSG § 1B1.13, cmt. n.1(A).

For that reason, to state a cognizable basis for a sentence reduction based on a medical condition, a defendant first must establish that his condition falls within one of the categories listed in the policy statement.  Those categories include, as particularly relevant here, (i) any terminal illness, and (ii) any "serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."  USSG 1B1.13, cmt. n.1(A).  If a defendant's medical condition does not fall within one of the categories specified in the application note (and no other part of the application note applies), his or her motion must be denied.

The mere existence of the COVID-19 pandemic, which poses a general threat to every non-immune person in the country, does not fall into either of those categories and therefore could not alone provide a basis for a sentence reduction.  The categories encompass specific serious medical

conditions afflicting an individual inmate, not generalized threats to the entire population. As the Third Circuit has held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *Raia*, 2020 WL 1647922 at *2; *see also Eberhart*, 2020 WL 1450745 at *2 ("a reduction of sentence due solely to concerns about the spread of COVID-19 is not consistent with the applicable policy statement of the Sentencing Commission as required by § 3582(c)(1)(A).").[6] To classify COVID-19 as an extraordinary and compelling reason would not only be inconsistent with the text of the statute and the policy statement, but would be detrimental to BOP's organized and comprehensive anti-COVID-19 regimens, could result in the scattershot treatment of inmates, and would undercut the strict criteria BOP employs to determine individual inmates' eligibility for sentence reductions and home confinement. Section 3582(c)(1)(A) contemplates sentence reductions for specific individuals, not the widespread prophylactic release of inmates and the modification of lawfully imposed sentences to deal with a worldwide viral pandemic.

That does not mean, however, that COVID-19 is irrelevant to a court's analysis of a motion under § 3582(c)(1)(A). If an inmate has a chronic medical condition that has been identified by the CDC as elevating the inmate's risk of becoming seriously ill from COVID-19,[7] that condition potentially could satisfy the standard of "extraordinary and compelling reasons." Under these

---

[6] *See also, e.g.*, *United States v. Coles*, 2020 WL 1899562 (E.D. Mich. Apr. 17, 2020) (denied for 28-year-old inmate at institution with outbreak); *United States v. Okpala*, 2020 WL 1864889 (E.D.N.Y. Apr. 14, 2020); *United States v. Weeks*, 2020 WL 1862634 (S.D.N.Y. Apr. 14, 2020); *United States v. Haney*, 2020 WL 1821988 (S.D.N.Y. Apr. 13, 2020) (denied for 61-year-old with no other conditions); *United States v. Pinto-Thomaz*, 2020 WL 1845875 (S.D.N.Y. Apr. 13, 2020) (two insider trading defendants with less than a year to serve have no risk factors); *United States v. Korn*, 2020 WL 1808213, at *6 (W.D.N.Y. Apr. 9, 2020) ("in this Court's view, the mere *possibility* of contracting a communicable disease such as COVID-19, without any showing that the Bureau of Prisons will not or cannot guard against or treat such a disease, does not constitute an extraordinary or compelling reason for a sentence reduction under the statutory scheme."); *United States v. Carver*, 2020 WL 1892340 (E.D. Wash. Apr. 8, 2020).

[7] *See* Centers for Disease Control, *At Risk for Severe Illness*, *available at* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last modified May 12, 2020).

circumstances, a chronic condition (*i.e.*, one "from which [the defendant] is not expected to recover") reasonably may be found to be "serious" and to "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility," even if that condition would not have constituted an "extraordinary and compelling reason" absent the risk of COVID-19. USSG § 1B1.13, cmt. n.1(A)(ii)(I).

In this case, Johnson has asserted that he suffers from acute hypertension and chronic kidney disease which make him more vulnerable to becoming seriously ill should he contract COVID-19. For two separate reasons, that contention does not establish "extraordinary and compelling reasons" for a sentence reduction under § 3582(c)(1)(A) and so Johnson's motion should not be granted.

First, Johnson has not provided sufficient documentation for his asserted medical conditions and therefore cannot meet his burden to establish his entitlement to a sentence reduction on that ground alone. The only corroboration he offers for his claimed conditions are two prescription labels which he claims are medications for hypertension. *See* ECF No. 175-1. In his motion he states that these medications are "immune weakening." ECF No. 175 at 3. However, Johnson offers no record from any doctor or other health care professional regarding his alleged diagnosis of hypertension or chronic kidney disease. Much less is there any record explaining the severity of any such condition. In the absence of any documentation or other reliable corroboration of the existence or severity of his claimed medical conditions, Johnson's motion does not provide a sufficient basis for compassionate release.

Second, even assuming he has been diagnosed with hypertension and chronic kidney disease, Johnson has not shown that he suffers from a medical condition that falls within one of the categories, or rises to the level of severity, specified in the policy statement's application note. That is, he has not explained how his claimed conditions qualify as a terminal illness or serious physical or medical condition that substantially diminishes his ability to provide self-care within the institution and from which he is not expected to recover. *See* USSG 1B1.13, cmt. n.1(A). In his motion he merely states that he has these conditions and that they render him susceptible to a

higher risk of severe illness if infected with COVID-19.  He fails to offer any further explanation of whether he is expected to recover from his particular health conditions or how in his case these conditions are terminal or substantially diminish his ability to provide self-care.  Further, hypertension is not one of the conditions identified by the CDC as increasing a person's risk for developing serious illness from COVID-19.  *See* note 7.  Regarding Johnson's claim that his hypertension medication increases his risk of serious illness from COVID-9 because it is "immune weakening", the CDC does identify "immunocompromised" as another risk-increasing condition which can be caused by the **prolonged** use of certain medications.  *Id.*  However, Johnson's motion offers no information regarding the severity of his hypertension, the length of time he has been taking the medication (even he characterizes his hypertension as "acute", not chronic), or any medical opinion that his medication is in fact immunosuppressive.  Finally, although chronic kidney disease is identified as increasing the risk of serious illness from COVID-19, the CDC qualifies the condition as "chronic kidney disease being treated with dialysis."  *Id.*  Johnson's motion offers no specific information regarding whether he is currently being treated with dialysis.  Thus, Johnson has failed to show that he suffers from a medical condition that falls within one of the categories, or rises to the level of severity, specified in the policy statement's application note

Denial of compassionate release in this matter is consistent with the case law following passage of the First Step Act where Courts have denied motions for compassionate release for failure to show extraordinary and compelling reasons.  *See, e.g., White v. United States*, 2019 WL 2067223, at *2 (W.D. Mo. May 9, 2019) (petitioner suffers from macular degeneration and knee problems; court holds petitioner did not meet his burden to prove that he is currently suffering from a serious medical condition that substantially diminishes his ability to provide for self-care within the prison environment); *United States v. Clark*, 2019 WL 1052020, at *3 (W.D.N.C. Mar. 5, 2019) (defendant suffers from declining health, diabetes, kidney failure, and back problems requiring a walker; court holds that, even assuming defendant is suffering from a serious physical or medical condition or deteriorating physical health due to age, she still falls short of the "extraordinary and compelling" standard because she has not demonstrated that her condition

substantially diminishes her ability to provide self-care within the corrections environment or that she is not expected to recover)

For these reasons, Johnson has failed to establish an "extraordinary and compelling reason" for a sentence reduction under § 3582(c), and thus, his motion should be denied.

**B.      The § 3553(A) Factors Strongly Weigh Against Johnson's Release.**

Alternatively, Johnson's request for a sentence reduction should be denied because he has failed to demonstrate that he merits release under the factors of 18 U.S.C. § 3553(a).

Under the applicable policy statement, this Court must deny a sentence reduction unless it determines the defendant "is not a danger to the safety of any other person or to the community." USSG § 1B1.13(2). Additionally, this Court must consider the § 3553(a) factors, as "applicable," as part of its analysis. *See* § 3582(c)(1)(A); *United States v. Chambliss*, 948 F.3d 691, 694 (5th Cir. 2020).

Although Johnson would not pose a danger to physical safety, he would pose a danger to the financial safety of the public if released.   Johnson's prior record, his offense conduct and even his criminal activity while on bond, demonstrate that Johnson is a recidivist fraudster who will likely continue to cheat others out of their money and property.   Therefore, he would constitute an economic danger to the community if released.

In addition, the § 3553(a) factors strongly disfavor a sentence reduction.   Regarding the nature and circumstances of the offense under § 3553(a)(1), from 2012 through 2017, Johnson engaged in extensive fraud using numerous aliases and business names to scam 41 victims out of over $1,200,000.00.  He even attempted to steal more money from his victims, resulting in a higher intended loss of over $1,800,000.00.  Furthermore, he did not cease his criminal activity even after being released on bond in this case, but instead, continued to commit significant fraud, resulting in the loss of his acceptance of responsibility.   Regarding the history and characteristics of the defendant under § 3553(a)(1), Johnson's criminal history includes a felony conviction for fraudulent check and a conviction for breach of trust/obtaining property under false tokens.   He also committed the instant offense while on state probation and accumulated enough criminal

18

history points to place him in a criminal history category of III.  Furthermore, within the last nine months, Johnson committed the disciplinary violation of possessing a hazardous tool (cellphone) while in the Bureau of Prisons.

With respect to the factors in § 3553(a)(2)(A) and (B), Johnson's current sentence clearly reflects the seriousness his offense, promotes respect for the law, provides just punishment, and affords adequate deterrence to criminal conduct.  He committed extensive fraud resulting in a tremendous loss to numerous victims.  He committed such conduct while on state probation and continued his fraudulent activity while on federal bond.  Therefore, a substantial sentence was clearly appropriate to promote respect for the law, and to justly punish and deter.  His offense conduct, continued criminal activity while on bond, his prior record of fraud and his disciplinary violation while incarcerated also show that he is likely to commit further crimes.  Therefore, the severity and length of his sentence was and still is necessary to protect the public from further crimes by him under § 3553(a)(2)(C).

As to the factors in § 3553(a)(3) and (4), regarding the kinds of sentences available and the applicable sentencing range established under the Sentencing Guidelines, the statutory maximum for Johnson's offense of conviction was 30 years' imprisonment and the applicable guideline range of imprisonment was 70 to 87 months.  The government offered Johnson an 11(c)(1)(C) stipulation to a sentencing range of 41 to 51 month's imprisonment which is already substantially below both the statutory and guideline ranges.  This Court sentenced Johnson to 51 months' imprisonment which is still 19 months below the low end of the applicable guideline range without the 11(c)(1)(C) stipulation.

Finally, regarding § 3553(a)(6), Johnson has been incarcerated for only 23 months, which is less than 50 % of the sentence of imprisonment imposed by this Court.  Given that his original sentence was already substantially below the applicable guideline range, to reduce his sentence further now when he has only served less than half of his sentence would be contrary to the purposes of § 3553(a)(6) to avoid unwarranted sentence disparities.

Accordingly, in light of the relevant § 3553(a) factors, this Court should deny the motion for a sentence reduction.

## Conclusion

For all of the aforementioned reasons, this Court should deny Johnson's motion to reduce his sentence under 18 U.S.C. § 3582(c)(1)(A) without prejudice for failure to exhaust administrative remedies or, in the alternative, deny his motion on the merits.

RESPECTFULLY SUBMITTED,

PETER M. MCCOY, JR.
UNITED STATES ATTORNEY

BY: /s/ A. Bradley Parham
       A. Bradley Parham
       Assistant U.S. Attorney
       401 W. Evans Street, Room 222
       Florence, SC 29501
       Tel. (843) 665-6688
       Fax. (843) 678-8809
       Brad.Parham@usdoj.gov

Florence, South Carolina
May 14, 2020

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal No.: 4:16-CR-00577-BHH |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| EDWARD LAWRENCE JOHNSON, II | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that as attorney of record I have caused Monika Burley, legal assistant, to serve on May 14, 2020, a true and correct copy of the attached **Government's Response to Defendant's Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i),** via the court's e-noticing system, but if that means failed, then by mailing through the United States mail, postage paid, the same on the following person:

EDWARD LAWRENCE JOHNSON, II
Register Number: 31469-171
FCI Coleman Low, Federal Correctional Institution
P.O. Box 1031
Coleman, FL  33521

/s/ A. Bradley Parham
A.  Bradley Parham
Assistant U.S. Attorney
401 W. Evans Street, Room 222
Florence, SC 29501
Tel. (843) 665-6688
Fax. (843) 678-8809
Brad.Parham@usdoj.gov

Florence, South Carolina
May 14, 2020

21