UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.                                                      )<br>)<br>EDWARD LAWRENCE JOHNSON, II  )<br>_____ ) | Criminal No. 4:16-577-BHH-1<br><br>**ORDER GRANTING<br>COMPASSIONATE RELEASE** |

Defendant Edward Lawrence Johnson, II ("Johnson") has filed a motion to reduce sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). (ECF No. 175.) He contends that he is at heightened risk for serious injury or death from the novel coronavirus, COVID-19, due to his preexisting conditions of chronic kidney disease and hypertension; he requests a reduction in sentence to time served and that he be released to live with his wife and children in their family residence. (*See id.*) For the reasons set forth below, Johnson's motion is granted.

## BACKGROUND

On September 20, 2017, Johnson pleaded guilty to Count 2 of the Superseding Indictment charging him with wire fraud, in violation of 18 U.S.C. § 1343. (ECF Nos. 116 & 117.) On June 12, 2018, this Court sentenced him to 51 months of imprisonment. (ECF Nos. 153 & 155.) As of the entry of this Order, Johnson has served 25 and a half months, or 50 percent, of that sentence. On April 24, 2020, Johnson filed his *pro se* motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). (ECF No. 175.) The Government responded in opposition to the motion on May 14, 2020. (ECF No. 177.) On June 1, 2020, through counsel, Johnson filed a reply in support of his motion. (ECF No. 178.) The Court subsequently directed Johnson, through counsel, to submit documentation substantiating his medical diagnoses of chronic kidney disease and

1

hypertension. (ECF No. 179.) On June 30, 2020, Johnson's counsel submitted Johnson's Bureau of Prisons ("BOP") medical records from 2018 through 2020. (ECF No. 181.) These matters are ripe for review and the Court now issues the following ruling.

## STANDARD OF REVIEW

Absent certain exceptions, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). Section 3582(c)(1)(A) sets forth an exception to this general rule where a defendant qualifies for a modification in his sentence due to certain age, health, or family circumstance factors, often referred to as compassionate release. *United States v. Norris*, 2020 WL 2110640, at *1 (E.D.N.C. Apr. 30, 2020). Prior to the passage of the Formerly Incarcerated Reenter Society Transformed Safely Transitioning Every Person Act, Pub. L. No. 115- 391, 132 Stat. 5194 (2018) ("First Step Act"), the BOP maintained exclusive discretion to file a motion for compassionate release pursuant to § 3582(c)(1)(A). *United States v. Dowdell*, 669 F. App'x 662 (4th Cir. 2016). Section 603 of the First Step Act amended § 3582(c)(1)(A) to divest exclusive control of this process from the BOP and empowered inmates to request compassionate release from the sentencing court after exhausting their administrative remedies. *United States v. Griggs*, 2020 WL 2614867, at *3 (D.S.C. May 22, 2020) (quoting *United States v. Edwards*, 2020 WL 1650406, at *3 (W.D. Va. April 2, 2020)).

As amended by the First Step Act, the compassionate release statute now provides in pertinent part:

> (c) Modification of an imposed term of imprisonment. —The Court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon

2

> motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A)(i). "A defendant who seeks compassionate release under § 3582(c)(1)(A)(i) has the burden of establishing that such relief is warranted." *Griggs*, 2020 WL 2614867 at *3.

The commentary and application notes to §1B1.13 of the United States Sentencing Commission's advisory Guidelines Manual provide criteria for determining whether extraordinary and compelling reasons that warrant a sentence reduction are present ("the Policy Statement"). USSG §1B1.13, comment. (n.1). These criteria generally concern the age, medical condition, or family circumstances of the defendant. *Id.* The Policy Statement provides four examples of what constitute "extraordinary and compelling reasons" for a sentence reduction: (1) medical condition of the defendant; (2) age of the defendant; (3) family circumstances; and (4) a catch-all "other reasons." *Id.* Importantly, the Policy Statement only applies to motions filed by the Director of the BOP. *United States v. Beck*, 425 F. Supp. 3d 573, 579 (M.D.N.C. 2019). "The Sentencing Commission has not amended or updated the old policy statement since the First Step Act was enacted, nor has it adopted a new policy statement applicable to motions filed by defendants." *Id.* (internal citation and footnote omitted). Accordingly, "[w]hile the old policy

3

statement provides helpful guidance, it does not constrain the Court's independent assessment of whether 'extraordinary and compelling reasons' warrant a sentencing reduction under § 3582(c)(1)(A)(i)." *Id.*

"Thus, courts may, on motions by defendants, consider whether a sentence reduction is warranted for extraordinary and compelling reasons other than those specifically identified in the application notes to the old policy statement." *Id.* at 579–80. Therefore, the determination of whether extraordinary and compelling reasons exist in a particular case is a question reserved to the sound discretion of the district court. *See id.* In addition to considering whether extraordinary and compelling circumstances are present, in order to determine if a reduction in sentence is warranted, a court must further consider the 18 U.S.C. § 3553(a) factors and decide whether the defendant is a danger to the safety of another person or the community as provided in 18 U.S.C. § 3142(g). USSG §1B1.13.

## DISCUSSION

### A. Administrative Exhaustion Requirement

In its response in opposition to Johnson's motion, the Government first argues that Johnson has not exhausted his administrative remedies and that the Court lacks jurisdiction to consider his request because he filed his motion for sentence reduction before 30 days had passed from the date he submitted his administrative request for compassionate release to the BOP. (ECF No. 177 at 1, 6–13.) As discussed above, the Court may grant compassionate release upon a defendant's motion after: (1) the defendant has fully exhausted his administrative rights to appeal a failure of the BOP to bring a motion on his behalf, or (2) the lapse of 30 days from the receipt of such a request

4

by the warden of the defendant's facility, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A). While it is true that at the time Johnson filed the instant motion on April 24, 2020 less than 30 days had lapsed from the date in early April on which he submitted his administrative request, the Government does not dispute that Johnson's administrative request was received by the warden and subsequently denied in early April. (*See* ECF No. 175 at 2; ECF No. 177 at 6.) Far more than 30 days have lapsed since that time. To require Johnson to refile his motion now would be to elevate form over substance and would constitute a waste of judicial resources. Moreover, even if Johnson's *pro se* filing were to be ignored, counsel's June 1, 2020 filing, docketed as a reply in support of the motion to reduce sentence, could itself be considered a compassionate release motion in substance, and was filed more than 30 days after Johnson's administrative request was received by the warden. (*See* ECF No. 178.) The 30-day waiting period is properly construed as a limitation on *the Court's action*, not the filing defendant: "*[T]he court*, . . . upon motion of the defendant after . . . the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility . . . *may reduce* the term of imprisonment . . . *if it finds* that . . . extraordinary and compelling reasons warrant such a reduction . . . . 18 U.S.C. § 3582(c)(1)(A)(i). Given that the 30-day threshold is unquestionably passed, the Court finds that the text and purpose of § 3582(c)(1)(A)'s administrative exhaustion requirement is satisfied, and, whether that requirement is deemed to be jurisdictional or a "claim-processing rule" (*see* ECF No. 177 at 10–11), the Court possesses the authority to decide the merits of Johnson's motion for compassionate release. *See, e.g.*, *United States v. Haney*, No. 19-CR-541 (JSR), 2020 WL 1821988, at *2–*3 (S.D.N.Y. Apr. 13, 2020) (holding that the administrative exhaustion requirement of the compassionate

release statute is a claim-processing rule, not a jurisdictional requirement, and that the court had discretion to waive the exhaustion requirement, but that no extraordinary or compelling circumstances existed to warrant the inmate's compassionate release).

### B. Extraordinary and Compelling Reasons

The COVID-19 pandemic presents a public health crisis in this country, and indeed the world, of a scope that is unprecedented in our lifetime. As of July 31, 2020, the COVID-19 virus has infected more than 4.4 million Americans and resulted in more than 150,000 American deaths. *See COVID-19 Dashboard by the Center for Systems Science and Engineering*, THE JOHNS HOPKINS UNIVERSITY, https://coronavirus.jhu.edu/map.html (last accessed July 31, 2020). There is currently no vaccine, cure, or treatment that has been proven effective. According to guidance from the Centers for Disease Control and Prevention ("CDC") the best way to prevent illness is to avoid being exposed to the virus, which is thought to spread mainly from person to person by way of respiratory droplets produced when an infected person coughs, sneezes, or talks. *See Protect Yourself*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/prevention.html (last updated April 24, 2020). The recommended methods to slow the spread of the virus are to avoid close contact (defined as being within 6 feet of another) with people outside your household—known as "social distancing," to wash your hands often, to cover your mouth and nose with a mask when around others, and to clean and disinfect surfaces. *See id.* It goes without saying that these precautions are often difficult, if not impossible, for prisoners to maintain given that they have little control over their isolation from others and are not readily able to secure products to protect themselves, such as masks and hand sanitizers. Thus, courts all over

the country have acknowledged that correctional facilities are vulnerable to viral outbreaks. *See, e.g.*, *Coreas v. Bounds*, TDC-20-0780, 2020 WL 1663133, at *2 (D. Md. Apr. 3, 2020) ("Prisons, jails, and detention centers are especially vulnerable to outbreaks of COVID-19.").

As the Government notes in its brief, the BOP has implemented substantial measures to protect prisoners from COVID-19 and to treat those who are infected. (*See* ECF No. at 2–5.) These efforts are admirable, and the BOP is to be commended for its professionalism. Nevertheless, the virus continues to proliferate in federal correctional institutes. As of July 30, 2020, the BOP reports that there are currently 3,035 federal inmates and 500 BOP staff with confirmed positive test results for COVID-19. *See COVID-19 Cases*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last updated July 30, 2020). The BOP further reports that 7,429 inmates and 683 staff have recovered, but 103 inmates and 1 BOP staff member have died from the virus. *Id.* In its brief, the Government asserted that as of May 13, 2020 "only one inmate and one staff member . . . have tested positive" at FCI Coleman Low, the institution where Johnson is housed. (ECF No. 177 at 6.) However, the current number of confirmed active cases of COVID-19 at FCI Coleman Low stand at 174 inmates and 18 staff. *See COVID-19 Cases*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last updated July 30, 2020).

The Government argues that the mere existence of COVID-19, which poses a general threat to every non-immune person in the country, on its own does not justify compassionate release in any particular case (*see* ECF No. 177 at 14–15), and the Court agrees. *See United States v. Kess*, No. CR ELH-14-480, 2020 WL 3268093, at *6 (D. Md.

7

June 17, 2020) ("To be sure, the coronavirus is not tantamount to a 'get out of jail free' card." (citation and quotation marks omitted)). Nevertheless, the Government acknowledges:

> If an inmate has a chronic medical condition that has been identified by the CDC as elevating the inmate's risk of becoming seriously ill from COVID-19,[7] that condition potentially could satisfy the standard of "extraordinary and compelling reasons." Under these circumstances, a chronic condition (*i.e.*, one "from which [the defendant] is not expected to recover") reasonably may be found to be "serious" and to "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility," even if that condition would not have constituted an "extraordinary and compelling reason" absent the risk of COVID-19. USSG § 1B1.13, cmt. n.1(A)(ii)(I).
>
> > [FN7] *See* Centers for Disease Control [and Prevention], *At Risk for Severe Illness*, *available at* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups- at-higher-risk.html (last modified May 12, 2020).

(*Id.* at 15–16.) However, the Government goes on to argue that Johnson's motion should be denied because: (1) he has not provided sufficient documentation for his asserted medical conditions and therefore cannot meet his burden to establish his entitlement to a sentence reduction; and (2) he has not shown that he suffers from a medical condition that falls within one of the categories, or rises to the level of severity, specified in the Policy Statement's application note—*i.e.*, he has not explained how his claimed conditions qualify as a terminal illness or serious physical or medical condition that substantially diminishes his ability to provide self-care within the institution and from which he is not expected to recover. (*See id.* at 16.)

Application Note 1 of USSG §1B1.13 defines "extraordinary and compelling reasons" in part as follows:

> 1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons

8

exist under any of the circumstances set forth below:

(A) Medical Condition of the Defendant.—

(i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is—

*(I) suffering from a serious physical or medical condition,*

(I) suffering from a serious functional or cognitive impairment, or

(III) experiencing deteriorating physical or mental health because of the aging process,

that *substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility* and from which he or she is not expected to recover.

USSG §1B1.13 comment. (n.1) (emphasis added). As mentioned above, this Policy Statement provides helpful guidance to the Court without constraining its independent analysis of whether extraordinary and compelling reasons warrant a sentence reduction under the specific circumstances of this case. *Beck*, 425 F. Supp. 3d at 579.

The CDC maintains a list of underlying medical conditions that place people of any age at an increased risk for severe illness from COVID-19, dividing the conditions into two categories: (1) conditions for which individuals "are at an increased risk of severe illness from COVID-19" ("first category"), and (2) conditions for which individuals "might be at an increased risk for severe illness from COVID-19" ("second category"). *People with Certain Medical Conditions*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated July 30, 2020). "Chronic kidney disease" (which

9

encompasses "chronic kidney disease of any stage") is designated in the first category and "Hypertension or high blood pressure" is designated in the second category. *Id.*

The Court is advised that the Department of Justice has taken the position that an inmate having one of the medical conditions identified by the CDC as placing an individual at increased risk for serious injury or death from COVID-19 constitutes an "extraordinary and compelling reason" under USSG §1B1.13 comment. (n.1(A)(ii)(I)). *See United States v. Moon*, No. CR 0:17-01151-MGL-1, 2020 WL 3958266, at *2 (D.S.C. July 13, 2020) ("The Court concurs with the Department of Justice's position [that] an inmate 'with a medical condition that the Center for Disease Control (CDC) has identified as a risk factor for COVID-19, and from which the inmate is not expected to recover,' qualifies under the definition for extraordinary and compelling circumstances during this pandemic." (modifications omitted)); *United States v. Fischer*, No. CR ELH-14-0595, 2020 WL 2769986, at *5 (D. Md. May 27, 2020) ("Notably, the Department of Justice has recognized the unique risks posed to inmates and employees. It recently adopted the position that any inmate who suffers from the chronic conditions associated with severe illness from COVID-19 should be considered as having an 'extraordinary and compelling reason' warranting reduction.").[1] In other words, at least with respect to chronic kidney

---

[1] It appears that the Department of Justice adopted this position at nearly the same time Government counsel in the instant case filed his response brief on May 14, 2020, and counsel is not to be faulted for being unaware of the change in position. Government counsel in *Fischer* filed an initial response to the inmate's compassionate release motion on May 13, 2020, but later amended the response stating: "The following day, the undersigned counsel was informed that the Department of Justice has taken the position that inmates who suffer from a condition identified by the CDC as putting them at higher risk for severe illness from COVID-19 should be considered to have a medical condition presenting an 'extraordinary and compelling reason' warranting a reduction, pursuant to U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I). Counsel has amended the government's response to reflect the Department's current litigating position." *United States v. Fischer*, No. CR ELH-14-0595, Doc. 98 at 11 n.2 (D. Md. May 15, 2020). Judge Hollander of the District of Maryland acknowledged the new position in her ruling: "The government admits that, pursuant to the recent position of the Department of Justice, defendant's documented medical conditions constitute an 'extraordinary and compelling' reason. ECF 98 at 20; *see also id.* at 11 n.2." *United States v. Fischer*, No. CR ELH-14-0595, 2020 WL 2769986, at *3 (D. Md. May 27, 2020).

10

disease and other underlying conditions in the first category, an inmate is deemed to be "suffering from a serious . . . medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *See* USSG §1B1.13 comment. (n.1(A)(ii)(I)). Pursuant to the Court's direction, Johnson's counsel submitted BOP medical records substantiating Johnson's diagnoses of "Chronic kidney disease, stage 3 (moderate)" and "Essential (primary) hypertension" (for which Johnson takes multiple medications). (*See* ECF Nos. 181-1, 181-2, 181-3.) Therefore, the Court finds that Johnson has made the necessary evidentiary showing and demonstrated that his medical condition qualifies as an extraordinary and compelling reason warranting consideration for a sentence reduction in the context of the COVID-19 pandemic. *See, e.g.*, *United States v. Johnson,* No. 2:14 CR 80, 2020 WL 4048140 (N.D. Ind. July 17, 2020) (granting compassionate release for 43-year-old inmate based on stage 3 (moderate) chronic kidney disease, high cholesterol, high blood pressure, and gout).

### C. Section 3553(a) Factors and Danger to Public Safety

The combination of an inmate's potential exposure to COVID-19 and possession of one or more of the CDC's itemized list of preexisting conditions does not automatically provide a basis for a reduced sentence. *Griggs*, 2020 WL 2614867 at *7. Having found that extraordinary and compelling reasons warrant a potential reduction, the Court must next consider the factors in 18 U.S.C. § 3553(a) and determine whether Johnson is a danger to the safety of another person or the community as provided in 18 U.S.C. § 3142(g). U.S.S.G. § 1B1.13.

The § 3553(a) factors instruct the Court to "impose a sentence sufficient, but not

greater than necessary" by considering, in part:

>   (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
>   (2) the need for the sentence imposed—(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
>   (3) the kinds of sentences available;
>
>   (4) the kinds of sentence and the sentencing range established for—(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . .;
>
>   . . . .
>
>   (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct . . . .

18 U.S.C. § 3553(a). Before granting a defendant's release, § 3142(g) instructs the Court to set "conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community" by taking into account:

>   (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, . . . involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
>   . . . .
>
>   (4) the nature and seriousness of the danger to any person or the community that would be posed by the [defendant's] release.

18 U.S.C. § 3142(g). Admittedly, this case presents a close question for the Court. On balance, the Court finds that the § 3553(a) factors support a sentence reduction and Johnson's release would not pose a significant danger to any person or the community.

While the Government concedes that Johnson would not pose a danger to physical

safety, it nonetheless argues that he would "pose a danger to the financial safety of the public if released." (ECF No. 177 at 18.) Specifically, the Government contends that "Johnson's prior record, his offense conduct and even his criminal activity while on bond, demonstrate that Johnson is a recidivist fraudster who will likely continue to cheat others out of their money and property. Therefore, he would constitute an economic danger to the community if released." (*Id.*)

At the time the Court imposed sentence in this case, the undersigned was indeed troubled by Johnson's continuation of his fraudulent activity while on bond supervision. (*See* PSR ¶¶ 11–16, ECF No. 158.) As a result of that behavior, Johnson was not awarded the point reduction in the calculation of his guidelines range for acceptance of responsibility, even though he accepted responsibility for his involvement in the instant offense and expressed remorse. (*See id.* ¶¶ 46, 69.) Johnson's conduct while on bond was brazen and constituted a striking tone deafness to the gravity of the federal prosecution he was facing. As disturbing as Johnson's conduct is, the Court finds that his continued fraudulent activity prior to sentencing does not demonstrate that he is a "danger to the safety of [another] person or to the community" in the manner contemplated in USSG §1B.13(2). Johnson's criminal history does not include any violent offenses or other conduct that would suggest he poses a danger to community safety, and the Court finds that his release would not offend the principles set forth in § 3142(g).

The application of the § 3553(a) factors gives the Court pause in granting a sentence reduction in this case. With respect to the nature and circumstances of the offense, the relevant conduct itemized in the presentence investigation report shows that from 2012 through 2017 Johnson engaged in extensive fraud using numerous aliases

and business names to defraud 41 victims out of more than $1.2 million. As already mentioned, Johnson did not cease his criminal activity after being released on bond, but rather continued to commit significant fraud. Regarding the history and characteristics of the defendant, Johnson's criminal history includes a felony conviction for fraudulent check and a conviction for breach of trust/obtaining property under false tokens; he also committed the instant offense while on state probation. Within the last year, Johnson committed the disciplinary violation of possessing a cellphone while in the BOP.

Nevertheless, the Court finds that the § 3553(a) factors, when considered in the context of the pandemic and extenuating circumstances faced by Johnson's family, do not prevent the award of a sentence reduction in this case. Johnson has now served 50 percent of the incarceration term that was initially imposed, which period has provided just punishment for his offense and will, the Court hopes, deter future misconduct. In addition, Johnson's family faces significant challenges with his medically ill eight-year-old son. (*See* ECF Nos. 166 & 169.) As a toddler, Johnson's son began having seizures that would render him unconscious. The condition has not improved, has resulted in bodily injury from sudden falls, is now compounded by migraine headaches, and has complicated the son's ability to attend school. The COVID-19 pandemic has introduced enormous societal difficulties for parents that are attempting to curate their children's educational needs, coordinate childcare, and continue with necessary employment. As of the issuance of this Order, the prognosis for in-person instruction in the public school system during the 2020—2021 academic year remains uncertain. The Court is informed that Johnson's wife, a co-defendant in this case, though herself in good health, has struggled to provide necessary care for their son as well as financial support for the family

14

with Johnson incarcerated. (*See id.*) Indeed, Johnson disclosed in his prior request for compassionate release that his BOP disciplinary infraction for use of a cellphone, though an inexcusable lapse in judgment, was born out of desperation to contact his wife pertaining to a health emergency with their son. Johnson's conduct while incarcerated has otherwise been exemplary. Johnson also included a release plan showing that he has an offer of immediate employment as a custodian at his home church. (ECF No. 169 at 8.) Thus, if granted a sentence reduction, Johnson will be able to assist his wife with caring for their son and daughter, alleviate the burden of meeting their son's medical and educational needs—which burden will undoubtably be exacerbated by the context of the pandemic, and contribute to much needed financial support for their family.

These times are indeed extraordinary, and the Court finds that a reduction in sentence is appropriate under the applicable law and the totality of the circumstances presented in this case. Accordingly, the Court hereby orders the following:

(1) Edward Lawrence Johnson, II's term of imprisonment is to be immediately reduced to the time he has already served as the Court finds that extraordinary and compelling reasons warrant such a reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).

(2) Johnson is to be tested for COVID-19 prior to his release from the BOP; if he is negative, he will be permitted to quarantine in the place to which he is released for 14 days; if he is positive, he will be quarantined in the BOP for 14 days prior to his release;

(3) Johnson is to be released from the custody of the BOP as soon as the release plan is implemented and travel arrangements can be made; and

(4) Johnson will begin serving his previously imposed five-year term of supervised release upon his release from imprisonment.

For the foregoing reasons, Johnson's motion for compassionate release (ECF No. 175) is GRANTED, and the BOP is directed to release Defendant Johnson in accordance with the above directives.

**IT IS SO ORDERED.**

                                              /s/Bruce Howe Hendricks
                                              United States District Judge

August 4, 2020
Charleston, South Carolina